UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ACE TREE SURGERY, INC.,                :
on behalf of itself and others         :
similarly situated,                    :        3:15cv1120 (WWE)
      Plaintiff,                       :
v.                                     :
                                       :
TEREX CORPORATION, TEREX               :
SOUTH DAKOTA, INC., and                :
TEREX UTILITIES, INC.,                 :
      Defendant.                       :

**MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR TRANSFER**

      On behalf of itself and a putative class, plaintiff Ace Tree Surgery, Inc. ("Ace") brings this action against defendants Terex Corporation, Terex South Dakota, Inc., and Terex Utilities, Inc.  Plaintiff Ace alleges breach of express and implied warranty, breach of the implied covenant of good faith and fair dealing, fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, unjust enrichment/restitution, violation of the Connecticut Unfair Trade Practices Act, violation of the South Dakota Deceptive Trade Practices and Consumer Protection Law, and violation of Georgia's Uniform Deceptive Trade Practices Act.  Defendant has moved to transfer the action to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a), §1406, and §1631.  For the following reasons, the motion to transfer will be granted.

  A.  **BACKGROUND**

      The following factual background is culled from the pleadings and the briefs relevant to the motion to transfer.

Plaintiff Ace Tree Surgery is a Georgia corporation with its principal place of business in Marietta, Georgia.

Defendant Terex Corporation is a Delaware corporation with its principal place of business in Westport, Connecticut.  Defendant Terex South Dakota is a Delaware Corporation with manufacturing facilities for the Terex's Hi-Ranger XT in South Dakota.  Terex South Dakota is alleged to be a subsidiary of Terex Corporation.  Defendant Terex Utilities is an Oregon Corporation with facilities in Tigard, Oregon.  It is alleged to be a subsidiary of Terex Corporation.  Terex Utilities is alleged to be involved in the sale, development and marketing of Hi-Ranger XTs throughout the nation.

Plaintiff Ace purchased Hi-Ranger XTs in Georgia from authorized Terex distributors or from Terex Corporation or its subsidiaries.  The Hi-Ranger XT model line is a series of vehicle-mounted elevating and rotating aerial devices.  Hi-Ranger XT allows a worker to stand in the bucket or platform that is secured to a boom that is connected to a pedestal mounted to a truck.

Terex is responsible for ensuring that Hi-Ranger XTs have designs that are safe and that meet the requisite standards for vehicle-mounted elevating aerial devices.  The Hi-Ranger XT must meet the standard for aerial devices promulgated by the American National Standards Institute as "ANSI A92.2 American National Standard for Vehicle Mounted Elevating and Rotating Work Platforms," ("ANSI A92.2"), which has been adopted by the Occupational Safety and Health Administration ("OSHA") as a binding regulation.  The ANSI A92.2 standard, at section 4 "Design Requirements" subsection 4.2 "Structural Safety Factors," requires that the steel structural elements of an aerial device have a calculated design stress that is not more than 50% of the minimum yield

strength of the steel. This structural safety factor can be referred to as a "two to one" or "2:1" safety factor.

Plaintiff alleges that the common design of all Hi-Ranger XTs is incapable of providing the requisite 2:1 structural safety factor due to a design defect.  However, Terex has failed to recall all Hi-Ranger XTs and refuses to acknowledge this serious safety defect.

Terex marketed and sold Hi-Ranger XTs directly to customers and through a network of authorized dealers.  Terex warrants that all Hi-Ranger XTs comply with OSHA-Adopted standard ANSI A92.2 in Certificates of Conformity, product manuals and in metal placards affixed to the Hi-Ranger XT.

The Certificate of Conformity states:

> This is to certify that the Terex Telelect Inc. unit designated above has been successfully tested and thoroughly inspected for conformance with the Terex Telelect Inc. specifications applicable to this model, for conformance with all details of the acknowledgment for the unit, and with applicable regulations of ANSI A 92.2-2001 as of the date shown. All mechanical and electrical tests have been performed at Terex Telelect Inc.

Terex also represents compliance with ANSI A92.2 compliance in two different manuals provided with every Hi-Range XT.  Additionally, Terex makes additional warranties for all Hi-Ranger XTs in its "Terex-Telelect Warranty" for "All Products."  This warranty provides a lifetime parts only warranty on structural components:

> The following structural members have a **LIFETIME** parts only warranty for the original owner after date of shipment from TEREX–TELELECT: Sub frame, Pedestal, Turntable, Steel and Fiberglass Booms. The **LIFETIME** warranty requires an annual service inspection by an authorized TEREX–TELELECT distributor and all replacement parts to be original equipment parts from TEREX–TELELECT. The above listed

    components shall have a FIVE (5) YEAR parts only warranty if the annual service inspection is performed by an approved entity other than an authorized TEREX–TELELECT distributor. All replacement parts are to be original equipment parts from TEREX–TELELECT.

Plaintiff alleges that Terex's attempt to limit or restrict the applicability of its lifetime parts only warranty or its certification of conformance with ANSI A92.2 standards through annual service inspection requirements, disclaimers, limitations of liability, or disavowal of the warranty of merchantability and fitness for a particular purpose are void as unconscionable in light of the design defects.

    In April 2014, a Hi-Ranger XT owned by plaintiff Ace failed on the lower boom around the connection to the lower boom cylinder while being operated by one of Ace's employees, Jeffery Gaddy.  As a result, Gaddy fell approximately 30 feet and suffered a spinal injury rendering him a paraplegic.  Gaddy has brought a personal injury suit against Terex in the Northern District of Georgia.

    On July 10, 2015, on behalf of itself and the putative class, plaintiff provided Terex with notice of the non-conformance of the structural components of all Hi-Ranger XTs with Terex's lifetime parts only warranty.  Terex refused to honor its warranty for all class members as requested by plaintiff.  Plaintiff alleges that this breach of warranty occurred in Connecticut.

### B.  DISCUSSION

    Defendants argue that transfer to the Northern District of Georgia is appropriate pursuant to Section 1404(a), which authorizes transfer to another district where venue is also proper.  The purpose of Section 1404(a) is to have federal civil suits tried in the district most suitable in terms of convenience, efficiency and justice.  See Van Dusen v.

Barrack, 376 U.S. 612, 616 (1964).  Defendants assert that they would consent to personal jurisdiction in the Northern District of Georgia. Plaintiff maintains that the case could have been brought in the Northern District of Georgia against all three defendants on the basis that the three defendant corporations represent alter egos of one another. For purposes of ruling on this motion, the Court will assume that this action could have been brought in the Northern District of Georgia.

Generally, the Court gives deference to a strong presumption in favor of a plaintiffs' choice of forum, which presumption may be overcome only by clear and convincing evidence that private and public interest factors favor trial in the alternative forum.  Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981).  However, courts within this Circuit have afforded less deference where a plaintiff seeks to bring an action individually and on behalf of a putative class.  See Andrews v. A.C. Roman & Assocs., Inc., 914 F. Supp. 2d 230, 238 (N.D.N.Y. 2012).  Additionally, plaintiff's choice of forum may be entitled to less weight where the operative facts are not connected to the choice of forum, where plaintiff chooses a forum other than his residence, and where a parallel matter is already pending in another forum that is also appropriate for transfer. Gokhberg v. Pnc Financial Svcs. Group, Inc., 2015 WL 9302837, *2 (S.D.N.Y.).  Here, the Court does not require that plaintiffs' choice of forum be outweighed by clear and convincing evidence; rather plaintiffs' choice of forum must be outweighed by a preponderance of the evidence.

The Court must balance the following relevant factors, including (1) locus of operative facts; (2) access to evidence; (3) convenience of witnesses; (4) availability of compulsory process to compel witness testimony; (5) convenience of the parties; (6)

familiarity of the forum with governing law; (7) trial efficiency; (8) the relative financial means of the parties; and a catchall factor (9), interests of justice.  The Court considers these factors in the relative order of importance.

    1.  Locus of Operative Facts

To determine the locus of operative facts, courts look to where the conduct giving rise to the claim occurred.  Costello v. Home Depot U.S.A., Inc., 888 F. Supp. 2d 258, 268 (D. Conn. 2012).  Plaintiff asserts that the design and acts of concealment were directed or approved by officials of Terex in Connecticut.  However, the claimed breach of warranty and other claims stem from an alleged design defect in the Hi-Ranger XTs that were designed and manufactured by Terex South Dakota in South Dakota.  According to the complaint, plaintiff purchased the Hi-Ranger XT in Georgia from distributors, and operated the defective High-Ranger XT in Georgia.  Accordingly, the locus of operative facts weighs in favor of the forum in the Northern District of Georgia.

    2.    Location of Relevant Documents

Due to the fact that the accident caused by the alleged design defect occurred in Georgia, a large portion of documents are found in Georgia.  Further, the discovery produced from the pending litigation stemming from that accident is also located in the Northern District of Georgia.  Plaintiff counters that it has access to the documents produced in the Georgia litigation and that any relevant corporate documents concerning decisionmaking relative to the subsidiaries' conduct exists in Connecticut.  Accordingly, this factor weighs slightly, if at all, in favor of transfer.

3.  Convenience of Witnesses and Parties

Transfer should not shift the inconvenience of travel from one party to another. A Slice of Pie Productions, LLC v. Wayans Bros. Entertainment, 392 F. Supp. 2d 297, 308 (D. Conn. 2005). Plaintiff argues that the majority of witnesses from Terex are located in Connecticut or South Dakota. Defendants maintain that the Northern District of Georgia is the more convenient forum for witnesses and parties outside of Georgia because it is more readily accessible by air than the District of Connecticut. Further, defendants point out that the Terex defendants are already defending an action in the Northern District of Georgia, and that it presents the most convenient forum for the Georgia subclass of purchasers and lessors of the Hi-Ranger XT. By filing this motion, defendants have acquiesced to the expense of travel to Georgia. In light of the convenience to the witnesses to the accident and the Georgia subclass, the Court finds that this factor weighs in favor of transfer.

4.  Compulsory Process to Compel Witness Testimony

Most of the witnesses in Connecticut or South Dakota represent defendants' employees. As defendants are seeking transfer to the Northern District of Georgia, there is not likely an issue concerning uncooperative employee witnesses who must be compelled to attend trial in the Northern District of Georgia. However, the District of Connecticut would not be able to compel a witness of the accident in Georgia to attend trial pursuant to Federal Rule of Civil Procedure 45(c)(1)(a). Thus, this factor also weighs in favor of transfer.

5.  Familiarity of the Forum with Governing Law

This Court is well experienced in applying the law of other states. Accordingly, this

factor does not weigh in favor of transfer.

      6.     <u>Trial Efficiency and Interest of Justice</u>

This Court is not so overburdened with such a congested docket that this case would be unduly delayed.  However, the interests of efficiency and justice may be better served by a transfer to a forum where there is a related pending action.  <u>Gokhberg v. Pnc Financial Svcs. Group, Inc.</u>, 2015 WL 9302837, at *2.  Although the instant case does not allege claims that are identical to the case pending in the Northern District of Georgia, the two cases are sufficiently factually related that transfer will facilitate coordination of settlement and resolution of any potential discovery disputes.  Accordingly, the interests of efficiency and justice weigh in favor of transfer.

    7. <u>Balance of the Factors</u>

The Court finds that the balance of the factors, particularly the convenience of witnesses, favors transfer to the Northern District of Georgia.  Accordingly, the Court will grant the motion to transfer.

## CONCLUSION

For the foregoing reasons, the motion to transfer [doc.#37] is GRANTED.  The clerk is instructed to transfer this case to the Northern District of Georgia.


Dated this 24th day of February, 2016 at Bridgeport, Connecticut.


                              <u>/s/Warren W. Eginton</u>
                              Warren W. Eginton
                              Senior U.S. District Judge